**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| OMAYRA SANCHEZ-RODRIGUEZ, <u>ET AL.</u>, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> AMERICAN AIRLINES, INC., <u>ET AL.</u>, <br><br> **Defendants.** <br><br> ──────────────── <br><br> AMERICAN AIRLINES, INC., <u>ET AL.</u>, <br><br> **Third Party Plaintiff,** <br><br> **v.** <br><br> AEROSTAR AIRPORT HOLDINGS, LLC, <u>ET AL.</u>, <br><br> **Third Party Defendants.** | **CIVIL NO. 21-1021 (PAD)** |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

Before the court is third-party defendant, Aerostar Airport Holdings, LLC ("Aerostar")'s "Motion to Dismiss the Third Party Complaint and to Compel the 3-Step Alternative Dispute Resolution Process of Negotiation, Mediation, and Arbitration" (Docket No. 44), which third-party plaintiff, American Airlines, Inc. ("American") opposed (Docket No. 51). Aerostar replied (Docket No. 58). For the reasons explained below, Aerostar's motion must be granted.

## I.   BACKGROUND

On January 12, 2021, plaintiffs, Omayra Sanchez-Rodriguez, Julio Ayala-Bousson, and the conjugal partnership between them, sued American on account of an injury that Ms. Sánchez-

Rodríguez suffered when she fell in a jet bridge at the Luis Muñoz Marín International Airport in Puerto Rico, while boarding American flight number AA2181 to Dallas, Texas, and continuing to Mexico City, Mexico (Docket No. 1; Docket No. 21, at pp. 4-7).  It had rained the night before and also during boarding, and water was leaking into the jet bridge.  Id.  Plaintiffs attribute the injury to American's negligence.  Id. at p. 8.

On May 7, 2021, American filed a third-party complaint against Aerostar; Perfect Cleaning Services, Inc.; Starr Indemnity & Liability Insurance Company; and other unnamed insurance companies, corporations and individuals (Docket No. 18).[1]  According to American, the third-party defendants operated, maintained and repaired the jet bridge in an inadequate or negligent way, and for this reason, must indemnify and compensate American if it were found liable for plaintiffs' damages.  Id.  On July 14, 2021, Aerostar filed a motion to dismiss the third-party complaint and to compel American to submit its claims through the three-step alternative dispute resolution process of negotiation, mediation and arbitration included in the "Airport Use Agreement" between the parties.

## II.   DISCUSSION

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, was enacted "to overcome a history of judicial hostility to arbitration agreements" and reflects "the fundamental principle that an agreement to arbitrate is a matter of contract."  Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc., 680 F.3d 118, 121 (1st Cir. 2012) (internal citations and quotations omitted).  It places arbitration agreements on an equal footing as other contracts by stating that "an agreement in writing to submit

---

[1] On June 23, 2021, American filed a motion for voluntary dismissal as to Starr Indemnity & Liability Company (Docket No. 40), which the court granted on June 30, 2021 (Docket No. 40).

to arbitration an existing controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2.

A party seeking to compel arbitration must demonstrate: (1) that a valid arbitration clause exists; (2) that the movant is entitled to invoke the clause; (3) that the other party is bound by it; and (4) that the claim asserted comes within the clause's scope. See, Bossé v. New York Life Insurance Company, 992 F.3d 20, 27 (1st Cir. 2021) (articulating test to compel arbitration); Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 508 (1st Cir. 2020) (same). Aerostar has made this showing.

The record satisfies factors 1, 2 and 3. The parties do not dispute that a valid agreement to arbitrate exists. See, Docket Nos. 44, at pp. 6-11, and 51, at p. 3 (whereby the parties concede they entered into the Airport Use Agreement, which contains an arbitration clause). And as to factors 2 and 3, they do not dispute that Aerostar is entitled to invoke the arbitration clause and that American is also bound by that clause. See, Docket Nos. 44, 51 and 58. They, however, disagree on whether American's claims against Aerostar fall within the scope of the arbitration clause set forth in Article 11 of the Airport Use Agreement.

To evaluate this question, courts look at the "factual allegations" underlying the claim. Dialysis Access Center, v. RMS Lifeline, Inc., 638 F.3d 367, 378 (1st Cir. 2011). They have consistently recognized that, given the preference for arbitration embodied in the FAA, arbitration clauses "should be interpreted broadly." Soto-Álvarez v. Am. Inv. & Mgmt. Co., 561 F.Supp.2d 228, 231 (D.P.R. 2008) (citing in part Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995)). Thus, an order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause "is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-583 (1960).

<u>Sanchez-Rodriguez, et al.</u> v. <u>American Airlines, Inc., et al.</u>
Civil No. 21-1021 (PAD)
Memorandum and Order
Page 4

In the absence of any express provision excluding a particular grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." <u>Id.</u> at 584-585.

Article 11 is clear and does not present any salient interpretation issue. Specifically, it states that, "except for disputes concerning termination of [the Airport Use Agreement] by any party (which shall be resolved as provided in Section 12.8), any dispute arising out of, relating to or in connection with [the Airport Use Agreement], **including any question as to whether such dispute is subject to arbitration**, shall be resolved as set forth in this Article 11" (Docket No. 44, Exhibit 1, at p. 88) (emphasis added). The contract further stipulates in Section 11.7 that, "no party shall be precluded from initiating a proceeding in a court of competent jurisdiction for the purpose of obtaining any emergency or provisional remedy to protect its rights that may be necessary and that is not otherwise available under [the Airport Use Agreement]." <u>Id.</u> at p. 90.

Along this line, it follows that: (1) Article 11 applies to *any* dispute arising out of the Airport Use Agreement, except for disputes concerning the termination of the Agreement; and (2) the parties can still seek remedies in court in relation to any such dispute *only* for the purpose of obtaining emergency or provisional remedies that are not available under the Agreement. And with this in place, the next inquiry deals with whether the dispute "arises out of" the Agreement, as required by Section 11.1. If that were the case, the alternate dispute resolution mechanism set in the Agreement must be pursued.

To that end, American's claims against Aerostar can be boiled down as follows: Aerostar knew of the jet bridge conditions that were the alleged cause of Ms. Sanchez-Rodriguez's accident, as it had reported the issue to Aerostar multiple times, but that Aerostar – who was responsible for operating, maintaining, and repairing the jet bridge – "failed to conduct the necessary repairs …

<u>Sanchez-Rodriguez, et al.</u> v. <u>American Airlines, Inc., et al.</u>
Civil No. 21-1021 (PAD)
Memorandum and Order
Page 5

to prevent leakage into the passageway" (Docket No. 18, at p. 6). For this, American seeks indemnification from Aerostar for any damages resulting from Aerostar's negligence, in accordance with Section 7.1(b) of the Agreement. <u>Id.</u> at pp. 6-7.

American's claim is a quintessential breach-of-contract claim. Section 3.5 of the Agreement requires Aerostar to "operate, maintain, and keep in good repair … all of the areas and facilities of the Airport" (Docket No. 44, Exhibit 1, at p. 35). American states that Aerostar is required to maintain and keep the jet bridge in good repair but that it breached this contractual obligation when it failed to address the jet bridge leakage. Aerostar has not conceded this point. Hence, the first question is whether Aerostar was responsible for keeping the jet bridge in good condition and, if so, whether it failed to do so. In other words, the dispute centers on whether Aerostar breached the Agreement in the first place. And because Section 11.1 requires that any dispute arising out of, relating to or in connection with the Agreement to be negotiated, mediated and arbitrated, American's breach-of-contract claim cannot be heard in this court.

American focuses on the indemnity provision set in Section 7.1(b) of the Agreement, rather than on the breach-of-contract issue (Docket No. 51, pp. 10-11).[2] To this effect, it posits that Section 7.1(b) is silent on arbitration and that, somehow, that implies that Section 11.1 does not apply to this dispute. <u>Id</u>. But the dispute here is not just whether Aerostar must indemnify American. The first issue is whether Aerostar breached the Agreement. If it did, the next question would be whether Aerostar is obligated to indemnify American. In any event, the Agreement's language is clear and, even if – for the sake of argument – some doubt remained, Section 11.1

_____

[2] Section 7.1(b) requires Aerostar to "indemnify, save, hold harmless, and defend" American and its agents "from and against any claim, action, loss, damage, injury, liability and cost and expense of whatsoever kind or nature (including reasonable attorney fees, disbursements, court costs and expert fees) due to or caused by injury to persons, including death, or damage to property to the extent arising from [Aerostar's] use, occupancy and operation of the Airport" except if such injury is caused by American's negligence (Docket No. 44, Exhibit 1, at p. 65).

Sanchez-Rodriguez, et al. v. American Airlines, Inc., et al.
Civil No. 21-1021 (PAD)
Memorandum and Order
Page 6

states that disputes about whether Article 11 applies should also be negotiated, mediated and/or

arbitrated. The matter belongs to arbitration.

## III.    CONCLUSION

For the reasons stated, Aerostar's "Motion to Dismiss the Third Party Complaint and to

Compel the 3-Step Alternative Dispute Resolution Process of Negotiation, Mediation and

Arbitration" is GRANTED as to Aerostar. American is directed to pursue its claims against

Aerostar in accordance with the mechanism set forth in Section 11.1 of the Airport Use Agreement.

**SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of March, 2022.

s/Pedro A. Delgado Hernández
PEDRO A. DELGADO HERNÁNDEZ
United States District Judge